The first case on the call is case number 124641, Raab v. Frank, David Grosin's appellant, agenda number 19. Counsel, if you're ready, you may proceed. Good morning, your honors. May it please the court, counsel. My name is Stephanie Fuger, and I represent David and Virginia Grosin, the appellants and third-party defendants in this matter. This case presents two issues for the court to consider. The first issue is whether landowners who neither own nor keep cattle have a duty to guard against injuries to persons caused by another person's cattle, and the second issue is whether a breach of a contract between a defendant and a third-party defendant can create liability and tort to an unrelated plaintiff for purposes of the Contribution Act. Now, with regard to the first argument, Frank, who leases land next to the Grosins, alleges that the Grosins had a common law duty under Illinois law to keep his cattle enclosed. There is no such duty at common law. The only duty with regard to restraining livestock arises under the Animals Running Act, which specifically limits liability to owners or keepers of cattle, and it's undisputed that the Grosins are neither. And so the trial court properly dismissed the common law negligence claim brought against the Grosins, and the appellate court should be reversed on that point. With regard to the second issue, Frank alleges that the Grosins owed a duty to the plaintiff under a contract titled, An Agreement in Connection with Lying Fences, which was entered into a decade ago between the predecessor owners to the Grosins and the predecessor owners to the parcel of land that Frank rents. The breach of this contract does not create liability and tort to the plaintiff, and thus the contribution claim must fail. The trial court properly dismissed that claim, and the appellate court's decision should be reversed. So now that I've kind of given a little roadmap of where I'm going to go today with my argument, I'd like to circle back to the first issue. Frank's amended complaint, third-party complaint against the Grosins, alleges that at common law there is a duty for the Grosins to enclose his cattle. And specifically at the records C-82 and C-83, you can see in the amended complaint, he alleges that the Grosins were, quote, negligent in allowing a boundary fence to exist when they knew or should have known that the fence was not reasonable to enclose the cattle being adjacent property. And so through all the attempts of Frank to stylize this as a fence problem or a premises liability problem, really it's a livestock at large problem. And he's trying to place the burden of enclosing his own cattle on someone else. And so the question becomes, is there a duty at common law for someone to take responsibility of someone else's cattle? And we have to go way back to the beginnings of this state in consideration of that. I would submit to this court that many of the cases cited in the briefs by both parties can be confusing. They're over 150 years old, and the passages can be taken out of context. But there are references to common law in a lot of those cases. And so Frank cites some of those, I think, to try to argue to this court that there was some sort of a common law duty. But if you drill down into what these cases are saying, those common law references are And I think the Seeley case, which is a Supreme Court case from 1848, is instructive on this point. It specifically holds no general law in this state prohibits cattle from running upon the highways. But on the contrary, as has been shown, cattle in this state are permitted to go at large. So the Seeley decision confirms that in 1848, there's no common law duty on the part of owners of cattle to restrain their animals. And so if there is no common law duty for the owner of cattle to restrain, there can be no common law duty for someone like my clients, the Grossens, to restrain somebody else's cattle. The Seeley decision also says the rule of the common law, and remember, this is a reference to English common law, requiring the owner of cattle, hogs, et cetera, to keep them upon his own ground does not prevail in Illinois. So there is no common law duty. So then we look, and we know from the case law that times changed, of course, and the Illinois legislature made the decision that we needed to have a law to protect third parties, innocent persons, from damages that would result with cattle, livestock, running at large. And so the Animals Running at Large Act was passed in 1871. And then for the first time, there is a duty to restrain animals. But it's not a duty on everyone. It's a duty on owners or keepers. And the legislative intent is that those classes of persons who have the ability to control animals bear the burden of making sure they stay on their land. I think the high-end case that we cited in the brief is instructive on this point to illustrate who's responsible under the Animals Running Act. That was a wrongful death action out of the 4th District brought after a motor vehicle accident involving a runaway horse. And in that instance, the plaintiff tried to bring an action against the landowner who owned the parcel of land from which the horse escaped. It wasn't the owner or keeper of the horse. And the court did not allow that claim to go forward because it said, listen, the Animals Running Act limits the class of persons who can be liable under the act. The landowner's not an owner or a keeper of the horse and can't be brought into this action under a contribution theory. Importantly, the plaintiff in the high-end case asked that court to do exactly what Frank is asking this court to do, which is to frame the issue as maybe a premises liability issue or an issue with offense. And really, the court said, you can't frame that any way other than a livestock-at-large problem. The whole issue arose because the horse escaped. We're dealing with a livestock-at-large problem. It must come under the confines of the Animals Running Act. That's just like this case. Ms. Fugger, with regard to Count 3, though, does the fence agreement run with the land and, therefore, the grossons would be bound by it? We do agree that the contract runs with the land and the grossons are bound by it. But the question with regard to Count 3 becomes, does a breach of that contract subject the grossons to liability and tort as concerns the plaintiff? Under that contract, no duties are owed to the plaintiff. The plaintiff isn't mentioned. In fact, I don't even believe he was born at the time that that contract was written. So to say that a breach of that contract somehow creates a duty to the plaintiff, I think, is a stretch and clearly doesn't subject the grossons to liability because they didn't owe a duty to the plaintiff. I would like to address the arguments made by Frank with regard to the Doyle case. Frank likens this case at bar to the Doyle case and says, in that case, and I'll just briefly address the facts of the Doyle case because I think this case is distinguishable from our case, in Doyle, a highway flagger was injured in the course of his employment when he was hit by a defendant driver and he brought a personal injury suit against the defendant driver. And the defendant driver brought in the highway flagger's employer and said, okay, you owe contribution because of negligence, supervision, training, et cetera, to your employee. And the employer asked that the contribution claim be dismissed and said, my employee could not sue me because of the worker's comp act and so we can't allow the defendant driver to bring me in under a contribution theory because I am immune to a direct suit. And the Supreme Court in that case said, no, just because you can assert the worker's comp act as an affirmative defense doesn't mean that you can't be brought in under a contribution claim because you are subject to liability and tort until the worker's comp act is asserted as an affirmative defense. That's not the same thing. The Grossons are not arguing that the Animals Running Act operates as an affirmative defense to bar the common law negligence claim. We are arguing that there is a lack of a duty under Illinois law. And the difference, the pivotal difference here is that an affirmative defense admits the legal sufficiency of the claim but says there's an extraneous reason, a special defense or privilege, that defeats the claim. The Grossons' argument is there's not a claim to be made because we don't have a duty. That negates an essential element of the claim, which is the difference. And in that regard, this case is more similar to Hopkins and Rowe, two cases that were cited in the brief. And in both cases where lack of duty, absence of a duty was found, the contribution claim must fail. And I would argue that our case is most similar to those two cases and the result in this case should mirror the result in both of those cases and the contribution claim should be dismissed. Ms. Fugger, the appellate court granted summary judgment as to count two, right? Yes. Is that at issue at all before this court? No, it was not across the field. Okay. And so now we come to issue two. Can a breach of a contract between a defendant and a third party defendant subject the third party to liability and tort in a contribution claim for damages to a third party? And when we look at the Contribution Act, there is a right of contribution where two or more persons subject to liability and tort are rising out of the same injury. But I think the question becomes, subject to liability and tort to whom? It has to be to the underlying plaintiff. And so in this case, there's no duty owed by the gross-ins to the underlying plaintiff by virtue of this agreement. And I want to talk a little bit about what the agreement actually is. It's a very simplistic contract, and it was entered into between two adjoining landowners to define what portions of certain division fences they were going to have responsibility to maintain. Because under the Illinois Fence Law Act, the act requires that adjoining landowners maintain fences in just proportion, which doesn't necessarily mean equal. So this contract was intended to define what was meant by just proportion. It didn't provide for any damages to be paid or consequences of breach, liquidated damages, nothing like that. It's just very simple between two adjoining landowners. And so to say that that contract creates a duty to a third party who wasn't born or certainly wasn't on the radar at the time that it was entered into is a stretch. And I think that argument must fail on its merits. Now, at the 11th hour, Frank has, for the first time, brought up the idea that perhaps the plaintiff was an incidental beneficiary of the contract. That argument is without merit as well, because the law recognizes the distinction between an intended beneficiary and an incidental beneficiary. An intended beneficiary gains rights in standing to sue under the contract. The plaintiff is not an intended beneficiary of this contract. He's not mentioned. There's not a generic description of a class of persons who were intended to be benefited that he would fall into. And so at best, he's an incidental beneficiary. But if that's even the case, which we don't agree that he is, but assuming that he was, he doesn't gain rights to sue the grosses for a breach of that duty. He's not owed a duty here. I would also submit to this court that if you look at the argument that's really being made, that there is a duty under this contract, or a duty at common law, for the grosses, my clients, to fence in cattle that they don't own, we get back to foreseeability, which is one element that the court needs to consider in determining whether there's a legal duty. Now, Frank, throughout the course of this case, has said, well, certainly, if you think about it, if a fence is deficient, it's foreseeable that a cow could get through and out onto the road. I would argue that that's a really simplified version of what we're looking at here. We have to look at the foreseeability to the grosses. And what happened here was that is it foreseeable to them that if they don't maintain a portion of their fence, their neighbor's cattle, who they didn't know were even on the parcel, will break through the fence, go through their parcel, get out onto the road, there's going to be an accident, there's going to be a six-figure settlement, and they're going to potentially be on the hook for that. I think that's where the foreseeability argument stretches the imagination. But even if this court finds that this situation was foreseeable, there are other factors to be considered, and I think the Woodlowski case that we cited in the brief speaks to these. It's not just foreseeability, because as that court observes, in hindsight, everything can be foreseeable, really, but we look at what is the burden in imposing this type of a duty on the grosses? What are the public policy considerations? What's the likelihood of injury? And that's where I think this case is concerning, if this court does what Frank is asking it to do, which is uphold the appellate court, that there's some sort of a duty on someone who doesn't own or keep cattle. Really, who wouldn't be liable, potentially, if you live near someone that owns cattle, if you're several parcels down the road, but the cow escapes, gets onto the next parcel, and onto your parcel, and then gets out onto the road, all of those persons could then be brought in under a contribution claim, which is contrary to the legislature's intent here under the Animals Running Act to squarely put liability on the person who owns or keeps cattle, who is in the best position to know about their livestock's propensities, about the status of the enclosures, and has the best ability to keep those cattle restrained. That's why they intended to limit those class of persons. And I think if you look at the potential ramifications of finding in this way, and not reversing the appellate court, would really be a dramatic departure from the intent of the act, as well as just general tort principles. I'd like to also address a couple of other arguments made by counsel in their brief. One of the things I would point out with regard to the breach of the contract, there are a number of cases cited, Cirillo's, Joe and Dan, International Corp., and several others, that involved breach of a contract creating liability and tort. And I would observe that in several of those cases, the breach of a contract did subject the third-party defendant to liability and tort. But there's a pivotal distinction between those cases and this one. In all of those cases, the contract was between the third-party defendant and the plaintiff, which is very different than we have here, where we have the third-party defendant and the defendant having a contract. There's no relationship between the third-party defendant and the plaintiff, in this case, such that a duty would arise. I don't think it's necessary for this court to decide the issue of whether the breach of a contract can ever subject someone, a third-party defendant, to liability and tort. But we would urge that this court definitively determine that the breach of a contract in this instance, where the plaintiff isn't named and isn't a party to the contract, doesn't subject the third-party defendant to liability and tort, where there isn't a duty owed. The other thing that I would observe about some of the cases, like City of Worth, where a affirmative defense, a special immunity, like interspousal immunity or parent-child immunity, was asserted as a defense to the underlying claim by the third-party defendant. One of the things that those cases says is that, if they're in those situations where there's an affirmative defense asserted, the court has to apply a balancing test to determine, is a contribution claim going to be allowed or not? And so, if the issue is, should we do that balancing test in this case? The answer is no, because again, this isn't an affirmative defense case. We're not asserting the Animals Running Act as an affirmative defense to the underlying common law negligence claim. We're simply saying, we don't have a duty at common law. We don't have a duty under the Act. The other thing that I would address, there are some arguments that have been made by Frank that maybe this is an inequitable result. It isn't the point of the Contribution Act to reach all culpable parties. And so, what I would say to that, first of all, is don't confuse the obligation to fix the fence with an obligation to restrain Frank's cattle. My clients do have an obligation to fix the fence under the Fence Law Act and under the contract, and we've never not said that that was our obligation. However, Frank had an easy remedy to bring an act under the Fence Law Act if he wanted to sue my clients because he didn't think they were meeting their obligations. But as the trial court and appellate court correctly found, he elected not to do that. He elected to undertake his own repairs and actively make a decision not to alert my clients to any issues with the fence. And so, to the idea that it would be somehow an inequitable or unfair result, he wasn't left without a remedy. He just chose not to avail himself of the provisions of the Act. And with regard to the obligation to restrain cattle, that falls to him, and he bears under the Act the responsibility for, and this is a direct quote from the statute, all damages that flow from his cows being out on the road. Is it your argument that if the keeper of the cattle doesn't give notice to the adjoining landowner that his portion of the fence needs repairs, he cannot seek contribution from him? Is that the point you make in your brief? Well, I think there's a couple of things to unpack in that. If he believes that the fence is deficient, not sufficient to keep his cattle, first of all, he has the first obligation to not put his cattle out in that land until the fence is sufficient. But secondly, it's not so much that he can't seek contribution until he's provided notice, but certainly in this instance, that's a bar because of the facts of this case. But if my clients need to be put on notice that there's something wrong with their fence, if that's what he believes, and they're not fixing it under the Act. And I think there's several instructive cases that were cited back when the issue was whether the Fence Law Act applied. That hasn't been appealed, so those weren't necessarily briefed in this instance. But yes, if he hasn't provided notice and given my clients an opportunity to fix any alleged deficiencies, then to seek recovery after an accident, for example, is something that should not be allowed under the Contribution Act. But I would also argue, I don't know that a violation of the Fence Act necessarily subjects my clients to liability and tort, because I would argue that this is similar to the Hopkins case, that there may be a violation of the Fence Law Act, but it's not necessarily a tortious act. It's just a violation of the statute. So whether even a violation of the Illinois Fence Law Act arises to a claim under the Contribution Act, I would submit to this court that no, it doesn't either way. So for those reasons, we would ask that the court reverse the appellate court and affirm the decision of the trial court. Thank you. Thank you. Counsel? Mr. Chief Justice, members of the court, opposing counsel, good morning. My name is Tim Zaliger. Along with my co-counsel, Lucas Breyer, we represent the appellee in this matter, Kenneth Frank. Now I think the one thing that maybe everybody in this room might agree to this morning is that in 1818, Illinois became a state, and ever since then, cattle have been causing problems. And this problem in this context brings up the issue of contribution. This court in Doyle v. Rhodes, when it analyzed the issue of contribution, looked very clearly at the underlying principle of why contributions should exist. It examined it, and it looked at the scholarly work of Dean Prosser. And Dean Prosser was noted by this court as having said that there is an obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally unintentionally responsible to be shouldered under one alone. What Prosser has asked this court to do is adopt an absolute rule that if an incident, an accident, involves a domestic animal, that cow or that horse, contribution is never allowed. Not necessarily never allowed in this specific factual scenario, but they're asking you to adopt a rule which says contribution is never allowed. And it doesn't matter from the grossness perspective and the theory that they ask you to adopt, how culpable the adjacent neighbor is factually. What did they do? How culpable were they? What effect did they do that may have contributed to that loss? This case is not about the outcome of that sharing of liability or who is more culpable or less culpable. This case is about the trial court which wrongly said you don't even get your day in court, and the appellate court which looking at your decision in Doyle said, wait a minute, you can't just blow the case out as a matter of law. This is an issue of contribution, and contribution is analyzed differently than the first right of liability against the plaintiff to that particular property. Mr. Zollinger, to accept your argument, would we have to believe that the Running at Large Act or the Fence Act contemplates the grossings in this particular situation? Who don't even live on the property would effectively have the responsibility to inspect the fence daily to ensure that Frank's cattle do not escape from Frank's property? Is that what we would be saying? You would not have to say that, Your Honor. Property owners, and the appellate court recognizes this, and those of you who are key states, a property owner does have a common law duty to maintain their property in a way that doesn't present conditions which cause danger to others. That is a separate obligation or duty than the Animals Running at Large Act. What the grossings ask you to do is keep it in a box. We're only going to look at this from an Animals Running at Large Act, and since the plaintiff, Rob, can't pursue a claim against the grossings for that violation, therefore, we're only going to look at that issue. But that's not what contribution says. May I stop you there? You mentioned the Ortiz case. We're talking about the type of liability since we're talking about the Joint Tort Fees Use Contribution Act and whether the parties are subject to liability in tort arising out of the same injury. Now, you mentioned some cases that have been cited here, the Ortiz case and DiGiorno, I think it is. Those are premises liability cases, correct? Where, as you say, a landowner has a duty to persons who utter upon their property to keep that property safe. This is not a premises liability theory in this case, correct? Rather, Mr. Rob was driving on a road, a highway, not on the property of the grossings. So unlike those cases, this is not a premises liability case, is it? Well, it is in a sense, Your Honor, because the obligation of the property owner doesn't stop at the property line. If you know you have a defective tree that someone has told you must come down or it's going to fall onto the adjacent roadway, that's in essence saying you have an obligation to act because it's foreseeable that you're going to cause injury or damage to somebody else's property. So there's no barrier to the property line if the accident itself happens off. Under the grossings theory, the adjacent property owner could stand on their lot and shoot off a shotgun to scare the cows, and they break through the fence and they could step back and say, I have no liability. And that's very ineffable when you look at who should share in that liability under the contribution theory. It was Frank who testified that the grossings could have discovered this only if they inspected the fence daily, right? The citation to the record, I think it's C-790, if I remember correctly, the testimony was actually that if they had inspected it daily, they could have prevented it versus necessarily knowing that that could happen. And he also testified that in his 40 years as a farmer, he had inspected the fences only weekly. I believe that testimony is in the record. And he also said that he didn't even know of anybody in the farming community who checked the fences daily, right? There is testimony in the record that says that. So whatever way we get at this, back to my initial question, we would have to find some obligation on them to inspect daily, wouldn't we? No, I don't believe you would. In this case, they're asking you to decide as a matter of law, ignore whatever the facts may be. As a matter of law, no contribution claim can lie. In this case, all we've asked for from day one was our day in court. The trier of fact, the jury in this case, might say, hey, wait a minute, given those facts, given the absentee issue of the grossings that they don't live there, we don't find them that they're culpable at all. But in this case, they're asking you to adopt a rule of law that says it does not matter what the facts are. And all we're asking for is the opportunity to pursue our day in court. They may find that the jury agrees with them. Well, what was the basis of the contribution claim? It had to do with allegations that they failed to repair the fence, and the fence was therefore defective, and that was the cause, because there was testimony in the record that said that the cow got out at the spot and the place where the grossings were responsible. And you're suggesting that's the cause, but I want to go back to the beginning. Let's talk about the word duty. Duty to Mr. Robb. Where does the duty to Mr. Robb arise in your theory?  As this court has held for purposes of contribution, it has always been read broader than the duty to an underlying plaintiff. And in this case, when we talk about a fence agreement, and the fence agreement ran with the land, they are bound by the fence agreement. Now, what is the purpose of a fence agreement? It's so that both parties keep the fence in due repair for the purposes for which it's being maintained. And so in this case, it is not unforeseeable that if a property owner says, I'm not going to repair my fence. I don't care that I'm going to breach a defense obligation. I'm not going to repair it, and those cattle get out because they choose not to do that. It's foreseeable that that could cause an injury to others. It's been suggested that that's not the totality of a duty analysis. A duty analysis is more complex. As this court has said, duty begins with the relationships of the parties, that is, the driver of the car to the defendant here. And then moving on beyond what kind of relationship, whether they're an invitee, special relationship, that kind of idea. Then the other parts of the duty analysis would include likelihood of harm and then balancing certainly of the burdens to protect them from harm. The duty analysis needs some development, it seems to me. And in this case, Your Honor, the matter was thrown out of the trial level as a matter of law. Isn't duty a matter of law? Duty is a matter of law, but the duty develops from the facts involved in the case. And in this situation, we've cited a number of cases, particularly in the contract case. In the contract situation, the underlying contract can form the nexus, and the courts use the term nexus, can form the nexus between the underlying injured plaintiff and the right of contribution. Well, those they talk about in those cases, the reason why that is so is because there is potential tort liability. That's how Ortiz versus Jesus people, Your General, that's how they talk about it. It's not just there was a breach of contract, therefore it's recoverable under the Joint Tort Feasors Act. Rather, the issue in those cases was even though it was brought under a breach of contract theory, there was potential tort liability. And I think in the Ortiz case, the court found, in fact, there was liability under the premises liability theory. When you look at Cirillio's and Joe and Dan and U.S. F&G cases, those are breach of contract arguments that indicate that there's a sufficient nexus between the underlying injured person to form a basis to seek contribution. In fact, Cirillio's reversed. The counsel talked about a case decision. Well, Cirillio's is out of the same district. Cirillio's case reversed and said contribution can be pursued because there was a sufficient nexus between the underlying person who was injured by that breach of contract and the party seeking contribution. And that case has nothing to do with potential tort liability under the Joint Tort Feasors Act? The case, there was a contribution case. And the court said even though this has nothing to do with tort, it's recoverable under the Joint Tort Feasors Contribution Act. But the underlying claims in Cirillio's were not tortious in nature. They were against their accountant, a breach of contract against the bank, a breach of contract against the accountant. And in that case, they said, wait a minute. We're going to allow the claim for contribution. Is there a sufficient nexus between the contract and the underlying plaintiff, the underlying victim? And in this case, the fence agreement that we're talking about compelled the grossers to maintain their fence in a way that was in proper repair. And if it was maintained in proper repair, the cattle wouldn't have gotten out. And it's not unforeseeable if you choose to ignore that allegation that that could happen. And so the foreseeable victim is the adjacent person on the roadway, the person off the property that gets damaged by that animal. You know, Mr. Zallinger, the focus in Doyle may have been on culpability, but the parties still must be a tortfeasor, isn't that right? But in Doyle, the argument presented here is the same type of argument that was presented in Doyle. Counsel argues that the statute doesn't create liability. It immunizes them from liability. When we talk about domestic animals running alarms, that they're not an owner or keeper. They're not an owner or keeper. But they say that that immunizes them from any liability, and therefore they're not liable in contribution. If you're in breach of contract, though, how are they a tortfeasor? Again, the cases earlier, Joe and Dan, argue that that creates a sufficient relationship, a sufficient nexus to say a party who's sued can seek contribution for that act because there's a relationship between the underlying plaintiff and the parties. In this case, the relationship is the fact that it's foreseeable. In essence, we argue that the incidental beneficiary of the offense agreement is going to be that person that could be injured on that adjacent roadway or the adjacent property if, in fact, that cattle get out. The created obligations on the part of the grossing, they fail to comply with that, and that's a sufficient nexus to be potentially subject to liability in tort under the case law for contribution. And Doyle said, wait a minute, the employer can't be held liable. The exclusive remedy of the COP Act prohibits a claim by the employee against the employer, no different than the argument here that somehow the animals running a large act stops the claims from the grossing, or excuse me, from the robbed underlying plaintiff against the grossing. It doesn't mean that contribution can't lie. And again, what they're arguing is really culpability. Who should bear all of the loss or none of the loss or part of the loss? And what we have argued from the beginning and what the appellate court acknowledged and reversed and sent back is that we should have our day in court. They may stand up in front of the jury and argue, look, we weren't there very often, listen to Frank's testimony, and therefore we shouldn't be held responsible at all. But that should be a decision by the trier of fact, not an absolute rule of law, that under no circumstance, no matter what the facts, a contribution claim can't lie on an animal running a large act. How do you address opposing counsel's argument that, and I know their argument is that the breach of contract could not constitute liability in tort, but they go further than that and said even if this court finds that that is the case, that the contract action still fails because proper notice wasn't given to the ghost under the Fence Act? Well, under the Fence Act, we're talking about an action for repair. It's not a contribution for the ultimate loss. It may be because someone was injured. A claim under the Fence Act would presumably give them a repair loss to repair the fence. The fact that we can't pursue, and that's not before your honor, we can't pursue a Fence Act claim because notice wasn't given simply means we can't pursue that claim. It would be very narrow to say, well, since you can't pursue that claim, you can't even use the contractual relationship to establish that nexus, if you will, between the grosses and the underlying victim-bearer problem. We can't pursue the Fence Act claim. The appellate court affirmed it. We did not cross the field. But this contract is still there. It didn't go away because the Fence Act claim doesn't exist. Isn't that somewhat of a semantical difference that they don't have a duty to repair, but they have a duty to prevent the cow from getting out? They still have a duty to repair. The duty to repair just can't be acted on under the Fence Act. The contractual obligation is still there. It didn't go away because we can't pursue the Fence Act claim. The contractual obligation is still there, and it's ongoing. It's reported with the property. It still exists today. The underlying contract, however, is still the nexus between, if they fail to comply with that, can they be held liable in contribution for some of the loss here? For some of the loss here. And, you know, the Hay End Court that they cite to talks about the owner or keeper of the cattle being held liable for what's referred to as the wanderlust of the cow. Well, the keeper can't control the wanderlust. The keeper can put fences up, or the owner can put fences up. In this case, the parties had agreed that the Brosons were responsible for one part of the fence, and Frank, or the owner there, he's a tenant, was responsible for other parts of the fence. And they choose to ignore that and say, it doesn't matter, we should never be held responsible. And they're asking this court to adopt the absolute rule of law that no matter what the facts are, contribution can never lie on animals running at large animals. That's a very narrow reading, and would result in situations much more egregious here, where it wouldn't matter at all what the adjacent property owner does. And they ask you to consider the four parcel owners from this parcel to this parcel all down. Well, that goes to the level of culpability. If there's a nexus, and those property owners can be sued, the contribution should go to court, and there should be a trial. The jury's going to look at that and say they're too far removed, if they are, but at least the jury should assess the facts and say, can they be held liable in contribution to share that equity, to share in that proportionate loss based on their level of culpability. I think my time's about up, so I will end there. I thank your honors for your time. We ask the appellate court to be adjourned. Could the Grossmans just remove the fence? They would be in violation of the fence agreement. And of the Fence Act? And there would be a claim under the Fence Act if they chose to do that today. That's correct. And if they remove the fence, and that caused the cattle to get out, they went out in the middle of the night, pulled up the post, and left the fence gone, and the cattle escaped, they would argue to you that they have no duty on the animals running a large act, and therefore shouldn't be held liable in contribution. To me, that type of absolute rule seems unjust. It seems inequitable. It seems in direct conflict with this court's case law, Doyle, Ramsey, Kotecki, even going all the way back to Skinner, on who should share in this law. But the facts in this case are that the keeper of the cattle didn't notify the adjoining landowner of the necessary repairs. Is that correct? Those facts are in the record, Your Honor, but the court at the trial level decided this is a matter of law without even considering the facts. So your client could know that there's a defect in the adjoining landowner's portion of the fence, do nothing, and still seek contribution. Well, it would be a pretty hard argument in front of a jury, but people argue that because they have an obligation to conduct that repair. Thank you very much. Thank you. Reply. I think the argument that I heard counsel just make is sort of, if we have some confusing back and forth, let's just throw it all in front of a jury and see what the jury makes of it. But I would urge this court to reverse the appellate court, affirm the trial court, and not let that happen, because there are certain situations where the law says, once we have undisputed material facts, legally certain claims don't ever get to a jury because we've decided that's our system of justice. And so counsel argues that I've urged the court to create an absolute rule. I don't need this court, and the Grosens aren't asking this court to create an absolute rule. We're just asking that the Animals Running Act be enforced. He also made the comment that we're asking the court to ignore the facts. Please don't ignore the facts, because I think they're very integral to the court's decision here, and there's not any facts in dispute. Some of the very important facts that I think the court should consider are that it's undisputed that my clients do not live on the property, they were not aware that Frank was renting the land, Frank knew who the Grosens were, he knew where they lived, he knew how to contact them, for that the three years prior to this accident, in each of the Julys prior to November of 2011 when the accident happened, the fence had washed out. And each time Frank made a conscious decision not to call the Grosens, he elected to undertake his own repairs to that fence and deemed them sufficient to continue to put his cattle out. And so there's many cases cited in the brief that talk about this exact thing with regard to the Fence Law Act. You don't get to sit on your haunches, take no action, and then after there's a bad thing, say, hey, share in the culpability of this. He had a very easy remedy, pick up the phone and call. Or if he thought that my clients were, quote, ignoring their duty, the other thing he could have done under the Fence Law Act is take the entire fence out, make repairs to it, and charge them in a circuit court action with half of the repairs. He elected to do none of those things. And so the idea of culpability here, who really should bear the burden of this loss, we don't have to ignore the facts. We look at the facts in the context of the Animals Running Act and the person who should bear responsibility is the owner or keeper of cattle. This is not something that I think the court needs to address, whether there would ever be a situation in which contribution could occur with regard to the Animals Running Act, but here's one I can think of. Let's say the two brothers own collectively a herd of cattle. One of their cows gets out on the road. Only one brother is sued. Could the other brother bring in a contribution action to the joint owner of cattle? That could be a situation where there's a contribution act. We're not asking this court to adopt a rule that there can never be a contribution act with regard to the Animals Running Act, but with regard to these facts, this situation doesn't apply. And again, counsel made the argument that the Grosens are saying that they are immunized from the Animals Running Act. This is a really important difference. I don't believe the Animals Running Act immunizes my clients. I believe it shows they have no duty under the law. Not a common law, and no duty under the act to restrain somebody else's cattle. There was a question asked of counsel about whether doesn't the contract claim go away because the notice provisions weren't followed. Yes, I believe the answer to that question is an emphatic yes, and I believe the Bigelow v. Burnside case speaks to this because there was a very similar case where parties had a contract with regard to what portions of the fence they were going to maintain. That's all it said. And the court in that case determined that the Fence Law Act comes in and fills the gaps with regard to that contract. So in terms of what notice is required or what happens if people don't maintain the just proportions that they were supposed to under the contract, it gets filled in by the fence law. And so as a matter of law, the trial court found and the appellate court affirmed, and that issue isn't before this court, that those notice provisions weren't complied with, and so I do think it is fatal as well to the contract claim even if this court gets beyond the idea of the subject to liability and tort, which as I explained before, I don't think the court should. With regard to the high-end case, I think really Frank is making an equitable argument that, hey, we should share this loss. The culpability should be shared between these adjoining landowners. And I think if you look at the facts of the high-end case, there's some instruction there. In that case, the landowner, again, who didn't own the course to escape, didn't keep the course, he just simply owned the parcel that it was kept on. In that case, the undisputed facts were that the landowner knew that the fences were not sufficient and that he also said that he was going to fix them and he undertook that obligation. Even though those were the facts, the court still found, hey, the legislature has defined who's responsible under the Animals Running Act, and it's not the landowner. So even in that case where I would argue there's more evidence of culpability on the part of the landowner, which we don't have in this case, the court still found that's the consequences of the legislative intent of the Animals Running Act. And I think, again, it squarely places the burden back on the people who are in the best position to guard against the cattle-causing problems, as counsel referred to in the beginning of this argument. It is true that we know that cattle cause problems, but that's why the burden is on the people who own those cattle, to make sure that the fences that they're putting them in are sufficient, to make sure that where they have them, the parcel of land is able to maintain the herd, to know about their own cattle's dangerous propensities. Those are all things that belong, in terms of a burden or a duty, on the person that owns the cattle. So we are asking this court not to create a new absolute rule, not to ignore the facts, but to look at the facts in this case, the undisputed material facts, to look at the Animals Running Act, and to affirm the trial court in finding that the Grossens had no duty with regard to Frank's cattle. And if there aren't other questions, thank you very much for your time. Thank you. Case number 124641, styled as Rob versus Frank, David Grossen's felon, will be taken under advisement as agenda number 19. Ms. Fugger, Mr. Zollinger, we thank you for your arguments today. You are excused.